UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KATHLEEN SHERMAN,

                  Plaintiff,

   -v-                                                 7:14-CV-0154

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

OFFICE OF PETER M. MARGOLIUS        PETER M. MARGOLIUS, ESQ.
Attorney for the Plaintiff
7 Howard Street
Catskill, NY 12414

SOCIAL SECURITY ADMINISTRATION       DAVID B. MYERS, ESQ.
Attorney for the Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

### **I. INTRODUCTION**

     On August 11, 2011, plaintiff Kathleen Sherman filed an application for disability insurance benefits alleging that various physical health problems had rendered her disabled beginning on March 16, 2011. Plaintiff's claim was initially denied on October 27, 2011. At plaintiff's request,

a hearing was held before Administrative Law Judge ("ALJ") Arthur Patane on September 28, 2012. Plaintiff appeared and testified at the hearing.

On November 15, 2012, the ALJ issued a written decision denying Sherman's application for benefits, which became the final decision of defendant Commissioner of Social Security when the Appeals Council denied plaintiff's request for review. See November 15, 2012 Decision, ECF No. 9-2 (hereinafter the "ALJ Decision"). On February 13, 2014, plaintiff filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security. Both parties have filed briefs outlining their positions. Having applied the requisite, deferential standard of review and for the reasons set forth below, judgment on the pleadings will be granted to the defendant affirming the Commissioner's determination and dismissing the plaintiff's complaint.

## II. APPLICABLE LAW

*(a) Scope of Review.*

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence

supports the decision.  See Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (D.J. Kahn); Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 398, 401 (1971).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams, 859 F.2d at 258.

*(b) Standard for Benefits*

The Social Security Administration has promulgated regulations establishing a five step sequential evaluation process to determine disability.  See 20 C.F.R. § 416.920(a)(4). Under that evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).  See also 20 C.F.R. § 404.1520.  "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003).

Claimants bear the burden to present evidence sufficient to produce favorable findings under the first four steps.  See  DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998).

Merely establishing that a person has been diagnosed with a disease or some degree of impairment is insufficient to render a condition severe. See Zenzel v. Astrue, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (D.J. Scullin). Rather, a claimant has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. See 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. § 404.1512(c) ("You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say you are disabled . . . ."). Evaluating a claimant's allegations and medical opinion evidence on the claimant's functioning is not an abstract inquiry, but rather a consideration of how a claimant's impairments and resultant symptoms actually affect her functioning. See 20 C.F.R. § 416.945(a).

If a claimant has a severe impairment that does not meet or equal the criteria of an impairment in the Listing of Impairments, the ALJ must determine the claimant's residual functional capacity, which is the most a claimant can still do despite the limitations imposed by her impairments. See 20 C.F.R. §§ 404.1520(e), 404.1545(a); Social Security Ruling 96-8p. Ordinarily, residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the residual functional capacity assessment must include a discussion of the individual's abilities on that basis. In determining residual functional capacity, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. See 20 C.F.R. § 404.1545(a). A residual functional capacity determination must account for limitations imposed by both severe and non-severe impairments. See 20 C.F.R. § 416.945(a)(2); Parker-Grose v. Astrue, 462 Fed. App'x 16, 18 (2d Cir. 2012).

### **III.  THE ALJ'S DECISION**

In his November 15, 2012 written opinion, the ALJ applied the five step test for determining disability.  At step one, the ALJ concluded that Sherman had not engaged in substantial gainful activity since she applied for disability benefits.  At step two, the ALJ determined that both plaintiff's musculoskeletal disorders and obesity were severe impairments, but failed to find that plaintiff's asthma, hypertension, hyperlipidemia, right carpal tunnel syndrome and diabetes mellitus constituted severe impairments.  At step three, the ALJ found that neither of her severe impairments met or equaled the criteria of an impairment in the Listing of Impairments.

After consideration of the limitations of all of Sherman's impairments, the ALJ determined that plaintiff had the residual functional capacity to perform the full range of sedentary work. Pursuant to 20 C.F.R. 404.1567, sedentary work "involves lifting no more than 10 pounds" and generally involves sitting, although "walking and standing are required occasionally".  As set forth in Social Security Ruling 96-9p, to perform the full range of sedentary work, a claimant must be able to walk and stand for a total of no more than about two hours of an eight hour workday. After explaining his reasoning for making his residual functional capacity determination, the ALJ found that plaintiff was unable to meet the exertional demands of the positions that she previously occupied, specifically a cashier and nurse's aide, both of which required extensive standing.  At step five, the ALJ consulted the medical vocational guidelines set forth in the regulations ("grids"), 20 C.F.R. Pt. 404, Subpart P, App. 2, and concluded that a finding of non-disability would be required under Medical Vocational Rule 201.21.  As a result, the ALJ found that plaintiff was not disabled at any relevant time and, accordingly, denied plaintiff's application for disability benefits.

## IV. DISCUSSION

*(a) The Parties' Contentions*

Sherman argues that the ALJ's conclusion that plaintiff retains a residual functional capacity to perform sedentary work is not based upon substantial evidence. Plaintiff states that she suffered from additional, non-severe impairments, including asthma, right carpal tunnel syndrome and chronic lower extremity edema, which resulted in plaintiff being unable to perform sedentary work. Plaintiff further argues that the ALJ failed to consider the limitations resulting from these non-severe impairments when determining plaintiff's residual functional capacity. Defendant argues that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed.

*(b) The ALJ Decision is Supported by Substantial Evidence*

While Sherman is correct that the ALJ did not specifically mention the plaintiff's three non-severe impairments when determining her residual functional capacity, such absence is not grounds for remand. Taken as a whole, the record supports the conclusion that: (a) plaintiff failed to demonstrate that her non-severe impairments resulted in limitations to her ability to perform basic work activities, (b) the ALJ correctly concluded that plaintiff's non-severe impairment resulted in little or no limitations in her ability to work in the Step 2 analysis and (c) the ALJ did consider any possible limitations resulting from plaintiff's non-severe impairments in the Step 4 residual functional capacity analysis. Further, the ALJ's residual functional capacity determination is otherwise supported by substantial evidence.

The ALJ specifically discussed both Sherman's asthma and carpal tunnel syndrome in his

Step 2 analysis. See ALJ Decision, ECF No. 9-2, at 15[1]. Tellingly, the plaintiff does not challenge the ALJ's conclusion that either of these impairments were non-severe. As a result, plaintiff concedes that the impairments constituted slight abnormalities that would have "no more than a minimal effect on an individual's ability to work." Rosario v. Apfel, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling 85-28).

*(i) Asthma.* In his Step 2 analysis, the ALJ found plaintiff's asthma did not require medication or frequent hospitalizations and was combated with an albuterol inhaler. See ALJ Decision at 15. The ALJ also noted that plaintiff did not allege that her asthma resulted in significant limitations in her function report or at the administrative hearing. Id. As a result, the ALJ concluded that plaintiff's asthma resulted in little or no limitation in her ability to perform basic work activities.

In his Step 4 analysis, the ALJ noted that sedentary work generally includes little exposure to pulmonary irritants that may have affected the claimant's breathing. Id. at 19. Although the ALJ did not mention plaintiff's asthma by name, given this statement, the ALJ did consider the possible limitation imposed by plaintiff's asthma when determining her residual functional capacity.

*(ii) Carpal Tunnel Syndrome.* Also in his Step 2 analysis, the ALJ found that Sherman's carpal tunnel syndrome resulted in only intermittent complaints of numbness in her non-dominant hand. Id. at 16. Further, plaintiff reported no problems with her hands and regularly engaged in crafts and sewing which required intricate use of her hands. Id.; Function Report, ECF No. 9-5, at 34-56. As a result, the objective medical evidence and plaintiff's daily activities of life indicated

---

[1] Page references are to the ECF pagination.

that plaintiff's carpal tunnel syndrome did not limit her ability to perform basic work activities. Similarly to plaintiff's asthma, while the ALJ did not mention plaintiff's carpal tunnel syndrome by name in his Step 4 residual functional capacity analysis, the ALJ noted that the plaintiff's "hand and finger dexterity was intact with 5/5 grip strength bilaterally". Id. at 18. Thus, the ALJ did consider possible limitations caused by plaintiff's non-severe carpal tunnel syndrome in evaluating her residual functional capacity.

*(iii) Edema.* In his Step 4 analysis, the ALJ did discuss Sherman's edema in her lower extremities. See ALJ Decision at 18. However, the treatment notes from plaintiff's physician indicated that such edema was subsiding and that plaintiff's use of a foot brace and cane were assisting in her mobility. Id. While the ALJ noted that plaintiff's edema, along with her musculoskeletal ailments, would require her to sit at times, the ALJ found that such limitations were not outside a finding that plaintiff could perform sedentary work. Id.

*(iv) Acknowledgment of Impairments.* In the Step 4 analysis, the ALJ expressly stated that he was aware of his obligation to consider Sherman's non-severe impairments when determining her residual functional capacity. The ALJ notes that he "must consider all of the claimant's impairments, including impairments that are not severe". Id. at 14. The ALJ further acknowledged that in making the residual functional capacity finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence". Id. As a result, the ALJ was applying the correct legal standard articulated in 20 C.F.R. § 416.945(a)(2) and was not ignorant of his obligation to consider plaintiff's non-severe impairments. These statements further support the conclusion that the ALJ considered the possible limitations resulting from plaintiff's non-severe impairments when determining plaintiff's residual functional capacity and found that they did not

erode her ability to perform sedentary work. See Reilly v. Commissioner of Social Security, 2015 WL 1459509, at *9 (W.D. Mich. Mar. 30, 2015) (The ALJ expressly stated that, "all impairments, both severe and non-severe, were considered" in resolving claimant's claim for benefits and such assertion was supported by a review of the decision).

While the ALJ did not expressly mention Sherman's non-severe impairments in his Step 4 analysis, this omission would be at most harmless error absent evidence that these impairments contributed to any functional limitations. See Darwin v. Colvin, 2015 WL 4078233 (E.D. Cal. July 6, 2015) (citing Robbins v. Social Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2005)) (harmless error exists when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"); Reilly, 2015 WL 1459509, at *9 ("no purpose would be served and no different outcome would result by remanding for the ALJ to revisit the RFC only to restate its analysis in step two"); Campbell v. Colvin, 2014 WL 3828220, at *15 (E.D. Va. Aug. 4, 2014) (ALJ's failure to discuss plaintiff's mental impairment was harmless error when "evidence does not support a finding of functional limitations due to [such] mental impairment."); Spissinger v. Colvin, 2014 WL 4955255, at *10 (D.S.C. July 9, 2014) ("[C]ourts generally will not remand for explicit findings regarding obesity where such findings would not affect the outcome."). For an impairment of any kind to be included in the Step 4 analysis, it must cause or at least contribute to "physical or mental limitation or restriction of a specific functional capacity." See Social Security Ruling 96-8p. In her brief, plaintiff identifies nothing in the administrative record showing that her asthma, carpal tunnel syndrome or edema had any effect on plaintiff's residual functional capacity. Instead, plaintiff states that she was diagnosed with such ailments without demonstrating how they limit her ability to perform basic work activities or how they erode her ability to perform sedentary work. Moreover, there is no evidence in the

record that such non-severe impairments impose limitations greater that the residual functional capacity established by the ALJ.

While the ALJ may not have specifically mentioned the non-severe impairments by name in his residual functional capacity analysis, the record as a whole shows that he did evaluate such impairments and the possible limitations resulting from such impairments and found such limitations to be non-existence or *de minimus*. Further, the ALJ acknowledged that he was required to consider such limitations in his residual functional capacity analysis. Plaintiff has failed to provide evidence of what, if any, limitations resulted from her non-severe impairments. As a result, it is fair to conclude that the ALJ did correctly consider plaintiff's non-severe impairments when determining her residual functional capacity. At a minimum, given the deferential standard applied to such a determination, it cannot be said that the failure to mention the non-severe impairments in the Step 4 analysis constituted reversible error. When reviewing the totality of the record, the ALJ's residual functional capacity determination is supported by substantial evidence. "Although an ALJ's residual functional capacity determination 'must be set forth with sufficient specificity to enable [the court] to decide whether the determination is supported by substantial evidence, we do not require that [the ALJ] have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability". Campbell v. Astrue, 465 Fed. App'x 4, 6 (2d Cir. 2012) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). "[W]here the rationale of the ALJ's decision can be gleaned from the record, there is no requirement that he specifically discuss or reconcile every potentially conflicting piece of evidence." Lamb v. Colvin, 2014 WL 6386993, at *9 (N.D.N.Y. Nov. 14, 2014) (D.J. D'Agostino) (citing Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). Under the Social Security

regulations, the ALJ's residual functional capacity determination must include an assessment of the claimant's work-related abilities to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch. See 20 C.F.R. § 404.1513(c)(1); § 404.1569a(a), § 416.969a(a); Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Once the function-by-function analysis is completed, the residual functional capacity may be expressed in terms of exertional levels of work, e.g. sedentary, light, medium, heavy and very heavy. Hogan v. Astrue, 491 F. Supp. 2d 347, 354 (W.D.N.Y. 2007).

Here, the ALJ found that Sherman's medically determinable physical impairments that could reasonably be expected to produce the claimant's pain or other symptoms. Next, the ALJ considered the extent to which the claimant's symptoms could reasonably be accepted as consistent with other objective medical evidence and other evidence. However, the ALJ properly rejected plaintiff's subjective complaints after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility and set set forth his reasons with sufficient specificity to enable the court to decide whether the determination is supported by substantial evidence. Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (D.J. Kahn). In making the credibility determination here, the ALJ reviewed plaintiff's activities of daily living, the exam findings of the medical professionals and the treatment plaintiff received. As a result, the ALJ properly analyzed the limitations plaintiff's impairments placed on her work ability and determined that she had difficulties standing and walking and greatly reduced ability to squat, bend, stoop and kneel, as well as limited ability to lift, push and pull. Therefore, the ALJ's residual functional capacity determination is supported by substantial evidence.

## IV. **CONCLUSION**

In sum, because the ALJ applied the correct legal standards and his decision is supported by substantial evidence, the Commissioner's decision denying plaintiff disability benefits is affirmed and the complaint is dismissed.

Therefore, it is ORDERED that:

(1) the Commissioner's decision denying plaintiff disability benefits is **AFFIRMED**;

(2) defendant's motion for judgment on the pleadings is **GRANTED**; and

(3) the complaint is **DISMISSED**.

The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

United States District Judge

Dated: October 7, 2015
      Utica, New York